## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **TAMMIE D. LOCKE** | * | **DOCKET NO.  06-1968** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Tammie D. Locke filed the instant application for Disability Insurance Benefits and Supplemental Security Income payments on July 22, 2005.  (Tr. 11).  She alleged disability since January 1, 2005, due to breast and uterine cancer, sleep apnea, and obesity.  *Id*.  The claims were denied at the initial stage of the administrative process.  (Tr. 21, 23-26,129).  Thereafter, Locke requested, and received a February 10, 2006, hearing before an Administrative Law Judge ("ALJ").  (Tr. 135-150).  However, in a May 26, 2006, written decision, the ALJ determined that Locke was not disabled under the Act, finding at Step Four of the sequential evaluation process that she retained the residual functional capacity to return to past relevant work as a secretary. (Tr. 8-16).  Locke appealed the adverse decision to the Appeals Council.  On August 25, 2006, the Appeals Council denied Locke's request for review, and thus the ALJ's decision became the

final decision of the Commissioner. (Tr. 3-5).

On October 24, 2006, Locke sought review before this court.  She alleges the following errors:

(1)   the ALJ failed to obtain a valid waiver of plaintiff's right to counsel;

(2)   the ALJ's residual functional capacity determination is not supported by substantial evidence; and

(3)   the ALJ's credibility finding was fundamentally flawed.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232,

2

(5th Cir. 1994).

## <u>Determination of Disability</u>

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## <u>Analysis</u>

<u>Issue 1</u>:

A claimant is entitled to receive adequate notice of her right to counsel at an administrative  hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003)(citing, *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).  At the hearing in the instant case, the ALJ confirmed that Locke had received a packet sent by the Office of Hearings and Appeals that explained how she could obtain a lawyer.  (Tr. 137).  Locke further acknowledged that she had read and understood the packet. *Id*.  The notice advised plaintiff that she had a right to representation, and potentially free representation.  (Tr. 29-30). *Compare*, *Clark v. Schweiker*,  652 F.2d 399, 402 (5th Cir. 1981).  Locke was also  provided with a list of organizations that could help her find a

4

representative and a copy of the SSA's pamphlet on the right to representation.  (*See*, Tr. 29, 31).[1]

Plaintiff argues that the ALJ provided confusing and inaccurate information to her when he stated

> [b]asically, what it says, if you qualify Legal Aid, we'll [sic] take your case for nothing.  If you get a, a [sic] lawyer that's versed in his field he'll make you sign a contract.  If you win, they win.  If you lose, they get a percentage of your back benefit, and that's regulated by me.  Now, if you need some time to get a lawyer, I'd say that you got that time.  If you want to go through without one, I'll do the best I can to take you through, but that choice is yours.

(Tr. 137).

Plaintiff replied that she was ready to proceed without an attorney.  (Tr. 138).

While the ALJ's explanation of the mechanics of a contingency agreement was obviously incorrect, plaintiff was provided written notice that some private attorneys may take the case under a fee agreement whereby they would receive no fee unless her claim was allowed.  (Tr. 31).  Locke stated that she had received and understood the written notice sent to her.  (Tr. 137). The court finds that Locke validly consented to proceed without representation.  *See, Castillo, supra*.[2]

_____

[1]  The court further notes that in the three months between the hearing and the ALJ's decision, there is no indication that plaintiff asked the ALJ to defer consideration until after she secured representation.

[2]  Even if plaintiff had not validly waived her right to representation, she still has not established resulting prejudice.  *See, Castillo, supra*.  Locke argues that had she been represented at the hearing, her representative could have obtained a report from her treating physician. Plaintiff points to the report submitted to the Appeals Council by her newly retained counsel. However, that report is not material to the ALJ's decision.  *See*, discussion, *infra*.  Plaintiff further argues that the ALJ failed to obtain the medical records from her January 10, 2006, treatment.  Yet, plaintiff's counsel has not adduced these records, and thus has not established that they might have altered the result.  *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996).

5

Issue 2

The ALJ found at Step Two of the sequential evaluation process that Locke suffered from severe impairments of obstructive sleep apnea, obesity, and endometrial adenocarcinoma. (Tr. 13, 15). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id.*

The ALJ then determined that Locke retained the residual functional capacity to perform a full range of sedentary work. (Tr. 14-15).[3] Plaintiff contends that the ALJ's residual functional capacity is not supported by substantial evidence because there was no medical evidence to support the assessment. However, plaintiff testified that she could lift up to ten pounds. (Tr. 147). Moreover, she admitted that she could sit all day long, and experienced limitations on standing and walking only because she fell asleep. (Tr. 145-146).[4] The ALJ noted that Locke's daytime sleepiness would have been controlled with proper use of her CPAP machine had she complied with the prescribed treatment. (Tr. 14). A claimant will not be found disabled if she fails, without good reason, to follow prescribed treatment. 20 C.F.R. §§ 404.1530, 416.930; *see*

---

[3] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[4] The court observes that the ALJ found that plaintiff could return to her past relevant work as a secretary as she performed the job. (Tr. 14-15). In her description of her past secretarial job, plaintiff stated that she was not required to stand or walk. (Tr. 38). Thus, even if her self-imposed limitations in these areas were credited, they would not have prevented her from performing her past relevant work.

*also*, *Lopez v. Massanari*, 273 F.3d 1094, 2001 WL 1085089 (5th Cir. 8/29/2001) (unpubl.).

The instant record contains substantial evidence to support the ALJ's determination that plaintiff failed to follow prescribed treatment.  Physician's notes from October 2005 indicate that plaintiff used the CPAP machine for only 30 minutes.  (Tr. 91).  The notes further state that plaintiff suffered from severe obstructive sleep apnea, but that she was non-compliant with her CPAP because she felt too much pressure.  *Id*.  The pressure setting on the machine was subsequently reduced.  *Id*.[5]  There is no indication that plaintiff continued to feel discomfort once the CPAP was de-pressurized.

Plaintiff contends that a July 12, 2006, Medical Statement Regarding Sleep Disorders completed by her treating physician, Dr. McCarty, and submitted to the Appeals Council in the first instance, confirms that her condition did not improve.  (Tr. 132-133).[6]  However, the report actually supports the ALJ's finding that plaintiff was non-compliant with her treatment which was expected to resolve her daytime somnolence:  "[w]e expect that if the patient is adherent to the schedule we recommend, as well as CPAP therapy, her 'disabling' excessive daytime somnolence should be temporary – would think a six month time period should be sufficient."

------

[5]  Plaintiff was to return within three months to assess her compliance with therapy.  (Tr. 91).  However, counsel did not supplement the record with the notes from the January 2006 office visit.

[6]  The evidence submitted to the Appeals Council forms part of the record before the court provided that it is new, material and related to the period prior to the ALJ's decision.  *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).  However, the report is not material, *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination.  *See, Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) and discussion, *infra*.

7

(Tr. 132-133).[7]  At the time of Dr. McCarty's report, Locke had been prescribed the CPAP for more than nine months.  The obvious inference is that Locke had not  complied with therapy.  Accordingly, she cannot be found disabled.  20 C.F.R. §§ 404.1530.

Issue 3

      The ALJ found that Locke's allegations regarding her limitations were not totally credible.  (Tr. 15).  Plaintiff challenges the adequacy of the ALJ's credibility determination.  When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence.  SSR 96-7p.  The ALJ is also obligated to consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  On the other hand, the ALJ need not follow formalistic rules in his credibility assessment.  *See, Falco v. Shalala*,  27 F.3d 160, 164 (5th Cir. 1994).

      At the hearing, plaintiff testified that her daytime somnolence essentially prevented her from working.  However, the ALJ determined that her daytime somnolence would have been alleviated had she complied with treatment.[8]  In other words, plaintiff's credibility regarding her limitations was undermined by her failure to follow prescribed treatment.

      For the reasons stated above, the undersigned finds that the Commissioner's decision is

---

[7]  To the extent that Dr. McCarty suggested that plaintiff's condition was disabling, a physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is not afforded any special significance.  20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

[8]  *See*, discussion, *supra*.

supported by substantial evidence and is free of legal error.[9]  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of July, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[9]  Plaintiff did not allege any errors with the remaining steps of the sequential evaluation process.